Our fourth case for this morning is Michael Kelley v. Attorney General Greg Zoeller. Ms. McTague? Ms. McTague May it please the Court. This case presents a rare case under Daniels v. U.S. where no channel of review was actually available to Petitioner Kelley. The particular constitutional violation at issue is the State's failure to expunge Kelley's 1975 robbery conviction pursuant to a plea agreement. So can you answer this question for me? Is it possible for people who are convicted under Mr. Kelley's circumstances in Indiana to contact some authority, the courts, somehow to check to see if a conviction has been expunged? I don't actually know the answer to that, Your Honor, but I think the issue I think that goes to the State's argument about the diligence around 1982. I understand that the day he's sitting there in prison, when the conditions for expungement haven't yet happened, that there's no action he could possibly take. But there's a long time after he's out of prison on that initial seven-year conviction where if he had wondered, you know, did they get rid of this or not, I bet there is a way of doing it. I don't happen to know Indiana law well enough to know how you would do that. I think the issue here is that very question of if he had wondered. He had a plea agreement with the State, said the State was supposed to expunge the conviction, and the idea that a defendant is then supposed to follow up with the State to make sure they upheld their part of the bargain really isn't within the scope of the plea agreement here. Yet the State of Indiana seems to have found as a matter of law that as of 1982, he knew there was a problem, that Kelly knew there was a problem with the expungement and that he simply waited too long to challenge it. I'm wondering, first of all, what is wrong with that finding? But specifically, what is the Federal problem with that finding? What is specifically wrong with that finding is that the finding was, the factual findings that the State made were unreasonable because they didn't consider all of the evidence in the record. And so they ignored the particular NCIC report that Kelly understood to have dismissed his charge. They ignored his arguments about the particular inconsistencies in the record that was presented to him. And ultimately, the Federal problem here is that he has been, his sentence has been enhanced on a constitutional violation because he says this conviction should have been dismissed. Now, can I just verify? I mean, Mr. Kelly has a not insubstantial criminal record, but I take it that this conviction is essential for his status as an armed career criminal. Is that correct? It is, Your Honor. Other than the two, of course. But all the rest of his problems with the law don't fall within the ACCA. That is correct, Your Honor. And so without this conviction, if it was expunged, it's not available under the ACCA, and his enhancement could not be maintained. So he would have been sentenced to 10 years instead of 15. I'm having some trouble with the argument that he was not aware that the State breached the plea agreement until 2011 when the government sought to use the 1975 conviction because in 1982 the PSR cited the 1975 conviction, meaning that it had shown up in the record. So why would that PSR not be sufficient to put him on notice that something is amiss with the expunction? You know, I think part of the problem here, we're looking at a PSR that had a lot of inconsistencies in it. We've got an NCIC report that appears to be inconsistent with the PSR itself, and ultimately the State is here looking at this with hindsight, saying that an uneducated defendant should have known, based on one PSR report in 1982, that the State didn't comply with a plea agreement that it had agreed to and that that somehow would put this defendant on notice to figure out what was going on. And I think on some level that's an unrealistic requirement for an uneducated young defendant who thought he had an agreement with the State. You know, you mentioned the NCIC report. So is that report showing the 1982 dismissal of a robbery? That's on page A144 of the petitioner's separate appendix. If so, it appears that the last three digits of a case number are visible, and they don't match the 1975 case number. And that would seem to be a factual hurdle for him as well. And the affidavit that supports the 1975 charge is from Crown Point, and the dismissed charge is from Hammond. So, you know, how does that help him? I mean, all of that is so difficult. Well, I think this is the ultimate problem of the record here, which is that the facts are all over the place, and so there is no way that Kelly could have looked at this in 1982 and really understood what was going on. These records are not clear. They're based on reporting from various jurisdictions, and ultimately he believed that he had a plea agreement. He had a signed plea agreement with the state that said they were supposed to dismiss the charge. So with the NCIC, though, because I can understand how he might be lulled into thinking because the charge was dismissed that everything was okay, there was no expungement. But the difference in the location, you know, was there a pending charge at both places, at both locations? It's unclear from the record whether there were pending charges in both places. The record on all of these charges are all over the place with the case numbers and the locations and everything else. It's just not entirely clear. And this, I think, is part of the issue. The district court dismissed his petition, you know, saying it had no jurisdictional grounds. If you'll excuse my interruption, the district court, I think, is worried about a more profound level of problem. And I see you're in your rebuttal time, but if need be we'll give people more time. He is simply not in custody now because of anything that Indiana did or didn't do in either 1975 or after he was out. And maybe it did the wrong things, but he is, as you yourself said, he has this longer sentence under the Armed Career Criminal Act as a result of his federal conviction. And so I don't see how he can move forward with a 2254 in light of Daniels, in light of Lackawanna, in light of all of these cases that the Supreme Court has decided. And I'm not really sure how far a 2255 would go since I don't see any evidence that he was absolutely without counsel. Your point about the terrible records from 1975 is absolutely well taken, but we have these legal doctrines that are designed to create finality, and you're running up against them. And I think the case here actually presents an issue that is not clear from either Daniels or Lackawanna. Both make it clear that a petitioner is supposed to have some avenue of review available to him. And what's happened here is that Kelly doesn't. Well, he doesn't now, but that's why I started with my first question. And I take your point that maybe people shouldn't be required to nag the state forever. On the other hand, it seems to me the existence of one's criminal record, especially if one happens to be in new criminal trouble, is a significant fact. And if it can be checked out with some diligence, maybe there's a need to do that if you're hoping that there was an expungement. I think part of the issue, too, is that at the time it didn't make a difference. This only became relevant to Kelly when it was used in the ACCA enhancement. In Indiana, whether something's expunged or not, they could choose to use it in an enhancement, but in the ACCA they can't. So in 1982 it would not have been clear to Kelly that 40 years later he would be in the position of an ACCA enhancement. I think as to the 2254 versus the 2255 petition, you're right. This case doesn't seem to fit squarely into either one. But the 2254 seems to make sense because we need the state to be a respondent so that they can enforce the plea agreement. That would not happen in a 2255. And since Daniel says Kelly needs to have some sort of relief, some petition has to be the right way to go. Now, ultimately there are a lot of factual issues that need to be determined. This was dismissed on the pleadings. It may be that remand is appropriate here to have a factual hearing and to reconstrue the petition either 2255 or just the Great Writ, but Kelly should have some manner of addressing this. Okay. I'll give you a minute of rebuttal when the time comes and we can make sure the state has enough time as well. Mr. Coby. May it please the Court. The district court properly found that it did not have jurisdiction to decide Mr. Kelly's petition because he is not in custody on the 1975 Lake County conviction. This case is directly controlled by Mayling v. Cook, a procuring opinion by the United States Supreme Court. The exact situation of Cook is here, in which a petitioner was attempting to challenge a fully expired conviction in a 2254 petition. Should the Missouri court have construed his petition as a section 2255 and ruled on the petition rather than transfer it? No, because at the time the court couldn't have because he wasn't sentenced in his federal case yet. So it could have stayed. No doubt it could have stayed. But in his petition, he didn't ask for it to be construed as a 2255. This is a pro se. I mean, honestly. Correct. But this was a pro se, but a prolific pro se. I know a lot of lawyers who can't navigate habeas, and so I'm not surprised if it's pro se. However experienced with the criminal system he may have been. But the problem is this. As Ms. McKay was just saying, and this was of some interest to me, now it happens that the Armed Career Criminal Act has a special rule about expunged convictions, and it says they're not going to count here. But as you know, they sometimes count and they sometimes don't. It depends on the crime, if the probation office is investigating a criminal history. They're gone but not forgotten in some sense. They can come back in any number of ways. And so he might not have had any reason to know the ins and outs of this, and to change him from a 10-year maximum to a 15-year minimum is a tremendously big consequence on his current federal conviction. And so it seems to me it could have been stayed under 2255. I understand the Supreme Court decisions the same way you do, that it's probably not a 2254. They seem to say you're just not in custody. That's an absolute prerequisite to 2254. But it doesn't mean there isn't a problem, and it's always disturbing to see a procedural situation that we've somehow boxed somebody out of any kind of relief from to say, tough luck, you're going to spend an extra five years in prison. That's barbaric. The question of what is available under a 2255 petition, of course, is decided by Daniels, and that would be decided by the Western District Court in Missouri if he were to file a 2255 petition there. I will point out that this isn't a case in which Kelly didn't have any mechanism for relief. He filed a post-conviction relief action in state court and prosecuted that. He just lost. But that doesn't mean he doesn't have a petition. After this ACCA problem came up, right? That's the one he lost on latches, right? He lost on latches. But the post-conviction court did look at the merits of his claim and commented on them in regard to notice. The court specifically found he had notice in 1982 that the conviction was still on his record. And the post-conviction court also found that the state presented compelling evidence that the plea agreement as described by Kelly never existed. So he's had a chance to litigate this. He just lost. And I would point out that his description of the plea agreement would be against the law of Indiana at that time. Indiana in 1975 didn't have any kind of expungement statute or use expungement in criminal law at all. So to suggest that the prosecutor agreed to an expungement when that wasn't even a concept used in criminal law in Indiana at the time seems far-fetched. There's nothing in the record that indicates at all that there was a plea agreement to this effect. In fact, the opposite is true. He pled guilty. No plea agreement was noted in the records when he pled guilty. At sentencing, the judge didn't mention anything about if you comply with the terms of the agreement. How good are our records of the sentencing? Do we actually have the transcript? We don't have the transcript. We actually have the judge's sentencing order. Just the memorandum. Just the sentencing order and the notation in the CCS. I mean, there's something to be said for using the date when the ACCA proceeding is going on in that he apparently between 1975 and then never faced a situation where the impact of that 1975 conviction made any difference to his life. Well, I'll point out that he was sentenced in 1982 to murder with this being listed on his pre-sentence investigation report with no objection. But there's no evidence that it enhanced whatever penalty he got for the murder. Well, correct. We don't know. But then he was in prison on that conviction until 2001. Then he also had interactions with the criminal justice system in 2003 and 2005, and both those felony proceedings apparently didn't raise any objection that this was on his record. And so what do you make of the NCIC report? Well, as the post-conviction court found in its opinion that those relate to two separate robberies he was arrested for at that time in 1982. He was arrested for two separate robberies by two separate police departments. And one was dismissed as it went forward, and he was actually convicted of the murder. The robbery connected to the murder he was convicted of. The other robbery he wasn't, and it seems to be dismissed. Now, whether that was part of a plea agreement or just the way the authorities decided to do it at that time, it's unclear. But the post-conviction court explicitly found that those were two separate robberies. And so the suggestion that all the records are confused I don't think is accurate. The records reflect what happened. They're only confusing if you take his now version of events that he's saying back in 1975 it should have been vacated or expunged. If you treat it as that wasn't part of the agreement, all the records are consistent with that. When did Indiana first introduce the idea of expungement if it wasn't around in 1975? In 1983 a statute was passed to allow expungement of arrest records when a conviction was not reached. So if you were arrested and then you could prove that you were the wrong person or there wasn't probable cause for your arrest to begin with, then you could get the records of your arrest expunged. Most recently, in the last few years, the Indiana legislature has passed expungement statutes. But the expungement statute even passed now for a defendant wouldn't be, or a petitioner wouldn't be eligible because of his criminal history. But even in regard to robbery, the record is just stamped expunged and then employers can't use that against him. But the conviction doesn't go away or anything like that in the expungement. But at the fundamental level, custody is not met, so jurisdiction is the problem. There is no custody. He's only in custody under his federal sentence, and so he has to challenge that custody. Thank you. Wait, don't go. If some court needs to make a factual determination about the nature of the 1975 robbery plea agreement, which court should that be? And if there needs to be a hearing to determine when he first learned that the 1975 conviction had not been expunged, in which court? And in what kind of proceeding should that occur? In a state collateral proceeding, which it did here. And the state court found that he knew and found latches, but then also – Okay. What court? Which court? Both the trial court that he presented his post-conviction relief petition to in Lake County and then also the Indiana Court of Appeals in reviewing that on appeal made the same – affirmed the finding, but also stated it as a finding. So both the trial court and the court of appeals. That's where it would be? Correct. And both those are in the appendix. One other question, because I'm just fascinated by this. Was Indiana very late with expungement? Do you have any idea of where the other states were? I don't. That's just amazing to me that, you know, it was that late. I don't. I didn't do any kind of research on that, so I'm not sure. Okay. I'll have to do it. Thank you. All right. Thank you, Mr. Kobe. Anything further? You can have a minute. As a first point here, the state at this point seems to now be debating and contesting the content of the plea agreement from 1975, and this is the first time that we've heard an argument about what they believe the nature of the plea agreement to be. Prior to this, they have just said the records are gone, we no longer have them, there's nothing we can rely on. And so, therefore, you lose. So to the extent there's a factual issue about what the scope of that plea agreement was, we really think there should be a remand for a factual determination on that issue. And do you agree where that should be? I think we could have it in the district court as part of the habeas petition, because the issue here is cause and prejudice, and the cause goes to whether Kelly knew that his record had not been expunged, and that goes to the nature of the plea agreement as well. So if we're talking about cause and prejudice on the habeas petition, it should be a hearing in the district court. And that would be a 2255 in the district court? We continue to believe it would be a 2254, because the state is the one who would be trying to prove up the plea agreement. But, you know, three courts have found that this was a 2254 when they construed his pro se petition. If it's to be reconstrued as a 2255, we'll present the evidence there. It would have to go back to Missouri, though, as a 2255. It would. Yeah. Okay. Thank you. All right, thank you very much, and we appreciate very much your accepting the appointment from the court. It's a great help to the court and to your client. And did you really come all the way from California? Well, have a great trip back. Our chilly Chicago today. You must think we never have spring. Thank you.